Cox v. Gibson.

No. 27,888.

EDITH COX, *Appellant*, v. MARTHA GIBSON, *Appellee.*

(262 Pac. 1030.)

SYLLABUS BY THE COURT.

1. PLEADING—*Motion to Strike—Prejudicial Rulings.* Error predicated on trial court's ruling on motion to strike considered, and held that the stricken matter did not prejudicially affect the merits of plaintiff's cause of action nor limit the scope of her proof in its support.

2. SAME—*Demurrer—Amendment as Acquiescing in Ruling.* When a demurrer to a petition is sustained and the plaintiff by leave of court amends her petition, the trial court's ruling on the demurrer is thereby acquiesced in and not subject to appellate review.

3. CONTINUANCE—*Discretion of Court.* Error assigned on the granting of a continuance and on an assessment of costs considered and not sustained.

4. APPEAL AND ERROR—*Review—Conflicting Evidence.* In an action by a sister to impress a trust on her deceased brother's estate, founded on an alleged general partnership and on a claim that the estate was partnership property, the record examined and held that the controlling issue was one of disputed fact, and that the trial court's general finding and judgment in favor of defendant presents no error which would justify or permit the judgment to be disturbed.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed January 7, 1928. Affirmed.

*F. Dumont Smith, Eustace Smith, Arthur T. Symns,* all of Hutchinson, *F. L. Slaughter* and *John T. Etling,* both of Kinsley, for the appellant.

*Elrick C. Cole, William Osmond, T. B. Kelley,* all of Great Bend, and *A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:    Plaintiff brought this action against her sister-in-law to impress and enforce an implied trust on a considerable estate devised to defendant by her late husband, David Gibson, brother of plaintiff.

David's will was made in 1908, about eleven years before he married defendant. He died in 1925. His will devised all his property to his "legal heirs," and as he had no children the defendant assumed possession as beneficiary and also as administratrix with the will

Appeal and Error, 4 C. J. pp. 809 n. 32, 810 n. 42, 876 n. 78, 883 n. 33. Continuances, 13 C. J. p. 123 n. 14. Pleading, 31 Cyc. pp. 745 n. 20, 753 n. 65.

annexed, and in due time David's estate was settled and the administratrix discharged.

The basis of plaintiff's action was an alleged partnership consisting of plaintiff and her brother David. She alleged that this partnership had endured for some twenty-three years, pursuant to which she and her brother had accumulated lands, money, bank stock and other chattels, all of the approximate value of $150,000; that for the convenience of the alleged partners the title of this property had been held in the name of her brother; that she was the equitable owner of an undivided half of it and entitled to joint possession thereof with defendant. Plaintiff prayed for an adjudication of her interest, for joint possession, partition, and for an accounting of half the income since the death of David Gibson.

Plaintiff's petition was subjected to motions to strike, demurrers and rulings which necessitated its being repeatedly amended.

Defendant's answer contained a general denial and pleaded the death of her husband testate, the administration of his estate, the laches of plaintiff, the statute of limitations and the statute of frauds.

On these issues the cause was tried without a jury. At the conclusion of plaintiff's evidence the trial court indicated its intention to sustain a demurrer thereto; whereupon plaintiff by leave of court amended her petition and reoffered her evidence; and the cause was adjourned from February 15, 1927, until May 25, 1927, at which time defendant presented her evidence and plaintiff submitted evidence in rebuttal. The cause was then taken under advisement until June 23, 1927, at which time the trial court made a general finding—

"That the plaintiff is not entitled to recover herein and that the defendant is entitled to judgment against the plaintiff for costs."

Judgment was entered accordingly, and plaintiff appeals, assigning various errors which will be noted.

The first error assigned relates to the trial court's ruling on defendant's motion to strike out certain allegations of plaintiff's original petition. It is not shown, however, that the stricken matter prejudicially narrowed the scope of plaintiff's cause of action, nor that she was limited in her proof because of its elimination. If the ruling adversely affected some material phase of the merits of the action, it should have been brought to this court for review as an intermediate appealable order. (*Grain Co. v. Coöperative As-*

*sociation,* 109 Kan. 293, 295, 198 Pac. 964; *Jerald v. Houston,* 120 Kan. 3, 242 Pac. 472.) By waiting until after final judgment, which was more than six months after the motion to strike was sustained, the right to have the ruling reviewed was lost.

The next error urged pertains to the sustaining of defendant's demurrer to plaintiff's evidence at the conclusion of the hearing on February 15, 1927. It seems, however, that this ruling was acquiesced in, because when that ruling was made plaintiff dismissed her first cause of action, and asked and obtained leave to amend (*Miles v. Hamilton,* 106 Kan. 804, 189 Pac. 926) ; following which, the trial court upheld the petition as amended as against defendant's motions and demurrer leveled against it, and overruled defendant's demurrer to the evidence reoffered by plaintiff in its support. Moreover, it is not uncommon for a trial court to change its rulings in the course of a trial, and ordinarily error cannot be predicated thereon if the final result is correct. (*Van Deren v. Heineke & Co.,* 122 Kan. 215, 218, 252 Pac. 459.)

Passing for the moment the third and most serious error assigned, we note plaintiff's objection to the trial court's ruling that defendant was entitled to a continuance from February to May, and to an allowance of costs, following the granting of leave to plaintiff to amend her petition. But the granting of a continuance with or without costs, like the allowance of amendments to pleadings, is vested in the trial court's discretion, and unless that discretion is manifestly abused—and certainly nothing like that appears in this record—no basis for reversible error is established. (*Hottenstein v. Conrad,* 9 Kan. 435.)

The crucial feature of this lawsuit, however, depends on what merit there may be in plaintiff's third assignment of error based on the trial court's general finding and judgment that plaintiff's evidence failed to prove a contract, express or implied, between the plaintiff and the deceased, David Gibson.

So far as concerns the facts alleged in plaintiff's last amended petition, it may be conceded that substantial evidence was introduced tending to show a partnership arrangement of some sort between Edith Cox and her brother David Gibson. The story of the accumulation of this considerable estate was the usual narrative of successful pioneering in this state. An emigrant father and mother came to Edwards county in early days, secured a homestead and

made a start. The father died in 1896, leaving the widow, three sons and four daughters to carry on. In time the children grew to maturity and all found homes of their own except David and Edith, who continued with their mother on the family homestead. At the time of the father's death, David was about 25 or 26 years old, and Edith about 13 years. There must have been some family arrangement, tacit or express, whereby David took charge of the land and live stock. He was apparently a man of enterprise and sagacity, and Edith and her mother made a home for him and for themselves, and by effective coöperation they prospered exceedingly. Year after year the holdings of land and personalty increased. When Edith was about 25 or 26 years old she married, and David conveyed to her a section of Haskell county land, naming the consideration as "Love and affection, a deed of gift." A number of witnesses testified that David had repeatedly declared in their hearing that he and his sister Edith were partners, that he spoke of his lands as "our land." He was heard to say, "We are going to buy some more land," and frequently spoke of "our lands." A lady who kept company with David asked him who he meant by "we" and "our," and he replied, "My sister Edith," and that they were "partners." A nephew of David testified that he had repeatedly heard his uncle say that Edith had helped him make every cent he had. It is needless to amplify on this phase of the evidence. Perhaps it could be said that if the trial court had given plaintiff's evidence implicit credence and there was no persuasive evidence of any sort to the contrary, there would be nothing an appellate court could do except to affirm a judgment in plaintiff's favor—a situation which not infrequently confronts this court on far less evidence than plaintiff was able to adduce in this case.

Be that as it may, there was evidence which militated heavily against that adduced in plaintiff's behalf. The fact that not in twenty-three years was there any settlement between the alleged partners was not without probative significance. When Edith married, David gave her a section of land worth $11,200 according to the prices then prevailing, and designated the consideration as a gift for love and affection. Was David showing his love and affection for his favorite sister by conveying and designating as an outright gift a valuable property of which she was already an equal owner with himself? Then there was the seemingly credible testi-

mony that David's accumulations of property were largely the fruits of various activities in which he was engaged with other partners, all of whom testified in this case. For a considerable time David and one person were partners in buying and selling horses and mules in Colorado, Kansas and elsewhere. He and another person were partners for many years in buying and selling Kansas and Oklahoma real estate. David and a third person were partners in buying and selling grain and operating elevators. This partnership was transformed into a corporation and was in existence when David died. So the considerable estate left by David was quite plausibly accounted for and its origin traced to other sources than that of the joint accumulation of the alleged partnership activities of David and Edith. Furthermore, in 1908, when Edith was a grown woman, and actively looking after David's agricultural affairs and successfully and prudently conducting the domestic affairs of the family consisting of David, the mother and herself, and at a time when David was a seemingly confirmed bachelor, he made his will—not particularly recognizing any special claim of Edith to any of his accumulations, but devising all he had to his legal heirs, who then and for ten years thereafter were his mother, if she survived him, and to his brothers and sisters, seven in all, if she did not. Another evidential circumstance of some force was the fact that when Edith was seeking a loan on her Haskell county land and was asked for a property statement she made no mention of any proprietary interest in David's accumulations. Another matter of some evidential significance was the fact that she permitted David's estate to be administered without question when among her other rights of procedure was the statutory one of administering the alleged partnership estate herself.

So whatever rulings the trial court made in the course of the trial to which technical exceptions might be taken, the one thing that stands out in this record is that the fact-finding tribunal resolved the controlling and disputed issue of fact against the plaintiff.

And this leaves nothing of importance to discuss. Plaintiff would make something out of a letter written by the trial judge to the various counsel representing the litigants. In it are discussed the judge's views of constructive and resulting trusts, and he comments on what he conceives to be the insufficiency of the evidence. Counsel for appellant contends that this letter shows that the trial judge misconceived the nature of the lawsuit. Be that as it may, the con-

sequences attaching to the concluding lines of the letter are significant. They read:

"Without attempting to place the decision in this case upon any one of the particular things discussed in this letter, but taking them all together, it is my conclusion that the defendant should have judgment for costs."

Even if the judge's letter had indicated some fallacious ideas on the nature of trusts, no basis of error could be predicated thereon. (*Quinton v. Kendall,* 122 Kan. 814, 823, syl. ¶ 11, 253 Pac. 600.)

The record discloses no error which would either compel or permit this judgment to be disturbed.

The judgment is affirmed.