No. 29,969.

W. H. LASSEN, *Appellant*, v. THE MARLAND PRODUCTION COMPANY et al., *Appellees*, and THE LANDOWNERS OIL ASSOCIATION, *Appellant* (WILLIAM F. KUEHN and ETHEL L. KUEHN, Interveners, *Appellees*).

(299 Pac. 947.)

Opinion filed June 6, 1931.

*A. M. Ebright, Allen B. Burch, J. B. Patterson* and *P. K. Smith,* all of Wichita, for the appellant.

*William H. Zwick* and *Robert R. Pruet,* both of Ponca City, Okla., for the appellees.

*Lorin T. Peters, Andrew F. Schoeppel,* both of Ness City, and *George Austin Brown,* of Wichita, for the interveners.

The opinion of the court was delivered by

SLOAN, J.: This action was brought to determine the ownership of an oil and gas lease covering 320 acres of land in Ness county. The appellees, William F. Kuehn and wife, intervened and contended that plaintiff's lease was procured by fraud and that a certain mineral deed given to the Landowners Oil Association was not delivered. They asked that the title to their land be quieted. The

trial court sustained their contention and rendered judgment accordingly. The plaintiff and the Landowners Oil Association appeal.

The Landowners Oil Association has filed no abstract or brief and has made no appearance in this court.

The trial court made special findings of fact, which state all of the essential facts in the case, and for that reason they are set out herein.

"FINDINGS OF FACT.

"The court finds:

"I. The intervener, William F. Kuehn, on May 12, 1922, purchased from the Kansas Investment Company the S½ of the S½ of section 5, the S½ of the SW¼ of section 4, and the N½ of the NW¼ of section 9, in township 18, range 25, in Ness county, Kansas.

"That the said William F. Kuehn at this time went into possession of said real estate; his purchase thereof, being under a wheat contract which contained the clause that a failure to comply with its terms 'shall at the option of the owner of the contract, work a forfeiture thereof.' This contract was assigned by the Kansas Investment Company on October 30, 1923, to Arthur W. Van Boskirk, of Colorado Springs, Colo., and on the same date the legal title to said real estate was conveyed to Van Boskirk. On May 22, 1929, Van Boskirk conveyed said real property to William F. Kuehn, he having complied with the terms thereof.

"II. That prior to May 31, 1928, the Marland Production Company had obtained oil and gas leases on land in the vicinity of that owned by the intervener, and on May 31, 1928, William F. Kuehn and Ethel L. Kuehn executed and delivered, on the real property above described, an oil, gas and mineral lease to the defendant Marland Production Company. That said lease was acknowledged on May 24, 1929, and recorded in the office of the register of deeds of Ness county, Kansas. Said lease recited a consideration of one dollar and the payment of a yearly rental of fifty cents an acre as annual delay rentals. Said one dollar consideration was not paid at the time of the execution and delivery of the lease.

"III. On May 31, 1928, the Marland Production Company entered into a written contract with William F. Kuehn and Ethel L. Kuehn by which the Marland Production Company obligated itself to commence the drilling of a test well on some portion of the acreage included in the block of acreage adjacent to and including the land herein described, on or before June 1, 1929, and it was agreed, in default of the drilling of said well, said lease given by Kuehn and wife to the Marland Production Company should be held null and void.

"IV. The said Marland Production Company prior to June 1, 1929, commenced drilling of a well on the acreage included in said block, which well was completed, and thereafter said Marland Production Company and the Continental Oil Company, its successor, paid the annual rentals provided in the lease above referred to, in the depository therein designated, the Beeler State Bank of Beeler, Kan., which rentals so paid, were refused by the said William F. Kuehn.

"V. That the Landowners Oil Association, defendant herein, is a corporation permitted to carry on its business in the state of Kansas. That on or about the 2d day of February, 1929, William F. Kuehn and wife made, executed and conditionally delivered to the Landowners Oil Association a certain conveyance, whereby they granted to the Landowners Oil Association an undivided one-half interest to the royalties, rents and profits which might accrue to them as owners of the S½ of the S½ of section 5, township 18, range 25, Ness county, Kansas, a part of the real estate herein described. That said conveyance was delivered to an agent of the Landowners Oil Association, who negotiated its execution, with the express understanding that it was not to become effective, unless the Landowners Oil Association procured the consent and approval thereof, by Van Boskirk, the then holder of the legal title to said real estate. That said condition was never complied with, and the Landowners Oil Association never did procure the consent to, or approval of said mineral deed, by Van Boskirk. Said conveyance to the Landowners Oil Association recited that said land was under an oil and gas lease executed in favor of the Marland Production Company; and was made subject to the terms of said lease.

"VI. That on or about March 9, 1929, agents of the plaintiff, W. H. Lassen, went to the residence of William F. Kuehn for the purpose of procuring an oil and gas lease on the land herein described. Said agents were informed by Kuehn that he had previously executed a lease on said land to the Marland Production Company, and they were shown a copy of said lease, and said agents of Lassen at that time, or shortly prior thereto, had seen a copy of the drilling contract, which the Marland Production Company had made with all parties from whom they obtained leases in that vicinity, and knew that such a contract had been made between Kuehn and the Marland Production Company. At this time the agents of Lassen told Kuehn and his wife (that the Marland Production Company was 'blown up' and had abandoned their intention of drilling a well in that vicinity), and that they, the agents of Lassen, had obtained oil and gas leases from other land in that vicinity, including the Olsen land and the land of the Shiners, and that if they could obtain the Kuehn lease and the Leonard Everett land, Lassen would drill a deep test well on some portion of the acreage obtained. These representations were untrue and were made for the purpose of inducing Kuehn and his wife to execute an oil and gas lease to Lassen, and were believed and relied upon by Kuehn and his wife in executing a lease to Lassen, which they did on that date.

"VII. That on the 13th day of March, 1929, Arthur W. Van Boskirk and wife executed and delivered an oil and gas lease covering the real property involved in this action, to W. H. Lassen. That said oil and gas lease was acknowledged on March 22, 1929, and filed for record in Ness county, Kansas, on the 11th day of April, 1929. That when Arthur Van Boskirk and wife executed the said oil and gas lease to W. H. Lassen, Arthur W. Van Boskirk was the owner of the legal title of said land, and at the time said lease was executed and delivered, W. H. Lassen paid to Van Boskirk a valuable consideration therefor.

"VIII. That on March 21, 1929, a written agreement was entered into

between Arthur W. Van Boskirk and Wm. F. Kuehn. This agreement was acknowledged on the 21st day of March, 1929, and was recorded in Ness county, Kansas, on July 31, 1929. That by the terms of this contract Wm. F. Kuehn gave to Arthur W. Van Boskirk full authority to execute to W. H. Lassen an oil and gas lease covering the property described in this action."

The appellant contends that finding No. 6 is not supported by the evidence. This requires an examination of the evidence.

William F. Kuehn, one of the appellees, testified:

"On March 9, 1929, I had a conversation with a Mr. Chesbro and Mr. Reid [admitted agents of appellant Lassen] at my farm . . . They said the Marland was blowed up. They were leasing everything around here and got everything around here and got everything around the Everett place. I asked them if they had the Olson place, the place adjoining me on the north, and they said 'yes' and I said 'have you got the Ray Shiners' and they said 'yes,' I got all of that . . .

"They made an offer of $160 cash, $1 an acre rental. Then is when I told them I only had a contract on the place and was sort of in bad on the payments. That they would have to get Van Boskirk's signature to the lease . . .

"I told them the Marland had a lease on the place, but when the Marland got its lease it did not pay me any money."

They produced a map and pointed out to appellee the land on which they held leases, including the Olson place, the Everett place and Ray Shiners' land.

"Q. Now, Mr. Kuehn, would you have signed that lease to Lassen if he had not told you the Marland company blowed up, and were not going to do anything with any of the leases; isn't that the reason you signed? A. Yes. . . .

"I says to them, well, if you will give me $160 spot cash, and a dollar an acre rental to me personally, in the face of the Marland lease, and make it all right with Van Boskirk, that I will sign your lease."

Mrs. Kuehn, one of the appellees, testified to substantially the same facts as her husband.

This evidence was in part disputed by the agents of appellant. The statement that the Marland company had "blowed up" was shown by ample evidence to be false, and the appellant did not have leases, but did have royalty contracts on a part of the land adjacent to the land in question.

The evidence is substantial and fairly covers and supports the findings made by the trial court, and is conclusive in this court. (*Bauman v. Hoffman*, 125 Kan. 62, 262 Pac. 545; *Cox v. Gibson*, 125 Kan. 76, 262 Pac. 1030; *Gartner v. Williams Oil & Gas Co.*, 125 Kan. 199, 263 Pac. 778.)

It is claimed by the appellant that the facts found do not show actionable fraud and that the judgment cannot be sustained as a matter of law. It is contended that the statements made by the agents of appellant were not material and did not relate to a past or existing fact, and that the appellee suffered no consequent injury. The evidence shows, and the court found, that the appellant's agents represented to the appellee that the Marland company had abandoned its intention of drilling a well, and that it had surrendered certain leases which had been acquired by appellant. These were statements of an existing condition and related to a matter in which the appellee was vitally interested. The real and important consideration for the lease executed to the Marland company was the promise to drill a test well near appellee's land, and if this had come to naught appellee would not be bound by the contract, and could lawfully lease his land to appellant. There is no merit to the contention that the statements were immaterial and not related to an existing fact. The claim that there was no consequent injury is likewise without merit. The appellee clouded his title by conflicting leases, subjected himself to the hazard of litigation and was deprived of the use of the rentals on the lease because of adverse claims. It is not necessary to prove pecuniary damages to have cancellation and rescission of a contract induced by fraud. (*Hirschman v. Healy,* 162 Minn. 328, 202 N. W. 734; *Conrad v. Darnell,* 114 Okla. 48, 242 Pac. 772.)

The contention is made that the agreement entered into between the appellee and Van Boskirk, authorizing Van Boskirk to execute a lease to appellant, estopped appellee to deny the validity of the lease and waived the alleged fraud. At the time of the execution of the agreement to Van Boskirk, which was in fact a part of the same transaction as the execution of the lease to appellant, the appellee had no knowledge of the alleged fraud. His action was predicated on the truth, not on the falsity, of the statements made by appellant's agents. The fraud which vitiated the lease invalidated the agreement. Estoppel is an equitable doctrine, its function is to protect from loss and not to secure advantage or to fortify gain. Estoppel is not available to the appellant.

It is claimed that the court erred in excluding evidence tending to impeach the appellee, who was appellant's witness. The records disclose that the appellant was permitted to cross-examine the witness at length, but the court refused to admit impeachment testimony.

This was within the sound discretion of the court. (*St. L. & S. F. Rly. Co. v. Weaver,* 35 Kan. 412, 11 Pac. 408; *Avery v. Howell,* 102 Kan. 527, 171 Pac. 628.) The court did not abuse its discretion.

We have examined the record and find that the evidence fairly supports the findings of fact and the court properly applied the law.

The judgment is affirmed.

HUTCHISON, J., not sitting.