No. 31,090.

Daisy Brown, Executrix of the Estate of Columbus Brown, Deceased, *Appellee*, v. Henry C. Meyer, *Appellant*.

(21 P. 2d 368.)

Opinion filed May 6, 1933.

*Arthur J. Stanley* and *Arthur J. Stanley, Jr.,* both of Kansas City, for the appellant.

*Jerome S. Koehler* and *A. L. Berger,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one by plaintiff as executrix of the estate of her deceased husband, Columbus Brown, to recover damages for his death wrongfully caused by defendant. Plaintiff recovered, and defendant appeals.

On the evening of Saturday, November 16, 1930, Columbus Brown was struck by defendant's automobile at the intersection of Minnesota avenue and Twelfth street, in Kansas City, Kan. As a result of the accident, Brown died of traumatic pneumonia.

The evening was dark, and it was raining. Defendant was driving westward near the center of the street. With him in his automobile were his wife, Lillie A. Meyer, and his son, Carl J. Meyer. After striking Brown, defendant drove over to the curb, and he

and his son went back to the place where the accident occurred. Brown had been knocked down. He got up by himself, but could not stand upright, and either defendant or his son said, "Let's take him to a doctor." Defendant took Brown in the automobile to Doctor Barney's house, but Doctor Barney was not at home. From Doctor Barney's house defendant took Brown to John A. Anderson's place of business. Brown was an employee of Anderson. At Anderson's place of business defendant introduced himself, said he had struck Brown on Minnesota avenue, and said Brown wanted to tell Anderson he would not be at work Monday morning. Defendant then took Brown to Doctor Barney's office. Defendant told Doctor Barney defendant did not know he had struck Brown, but from defendant's conclusion that must have been the way it occurred. Based on what defendant and Brown told him, Doctor Barney examined Brown for injuries resulting from being struck by an automobile. Doctor Barney was employed that night by defendant, but Doctor Barney was paid by Frank M. Wisdom, who represented the insurance company which had insured defendant.

Defendant took Brown home, introduced himself to Mrs. Brown, told Mrs. Brown he ran into her husband, and gave an account of the accident. He said the cause of the accident was, he was pulling around another car, which caused him to strike Brown. He did not see Brown before striking him. His wife said he hit somebody. He said, "No, I didn't," and his boy said, "Yes, you did, papa." Then he halted his car.

As soon as Mrs. Brown could undress her husband and get him to bed, she called Doctor Blount, who found wounds and bruises on Brown's chest. Brown was suffering severely, and was expectorating blood.

Defendant visited Brown several times before Brown's death, and telephoned Mrs. Brown several times. On one occasion, just after defendant concluded a telephone conversation, Wisdom came to Brown's house. On one occasion, when defendant was at Brown's house, defendant gave an account of the accident to a visitor who called to see Brown. On an occasion Harry Bell was at defendant's place of business, and defendant told Bell he hit a darkey at Twelfth and Minnesota; his wife and son were with him and it was dark and raining.

Several doctors were called, and examined Brown before his death. After his death, an autopsy was held. Doctor Barney was present,

paid by Wisdom. Doctor Nesselrode arranged for the autopsy, and made a report to Wisdom, who was investigating the case, and who stated to the doctor that Brown was struck by an automobile.

The result of the foregoing is, there was no room for doubt that defendant's automobile struck Brown and injured him, and the testimony left no room for doubt that the injury caused Brown's death.

Defendant contends some testimony was improperly admitted. The proceedings under review are those of a second trial. At the first trial, a verdict was returned for defendant. Afterwards a new trial was granted, and the contention makes it necessary to review the proceedings antedating admission of the testimony.

At the first trial, Joseph H. Brady conducted the defense in a perfectly honorable manner, and he is blameless for what occurred. At the hearing on the motion for new trial it was made to appear that Mr. Brady was not employed by Meyer. He was employed by representatives of the General Indemnity Corporation of Rochester, N. Y. That corporation is an insurance company which had issued to Meyer an automobile insurance policy in which the company agreed to pay damages, costs and expenses on account of accident, and to defend any suit brought against Meyer on account of accident which Meyer might have while operating his automobile. Frank M. Wisdom, some of whose activities with respect to the accident which did happen have been alluded to, was an investigator or claim agent of the company, and Wisdom made an investigation of the accident. None of these facts were contested at the hearing on the motion for new trial.

At the first trial, Wisdom assisted Mr. Brady—testified he was helping Mr. Brady the best he knew how. Because Wisdom had investigated the accident, he was called as a witness by plaintiff. He admitted talking to Meyer, and testified as follows:

"Q. Will you state to the jury exactly what Mr. Meyer said to you with reference to said accident? A. He told me he didn't have an accident at Twelfth and Minnesota avenue, or his car ever hitting or striking some one."

Wisdom also testified Meyer's statement was not reduced to writing, and testified further as follows:

"Q. Did you ever see a written statement signed by Henry C. Meyer? A. I told you, Mr. Koehler, I don't remember. I do not remember ever seeing a written statement signed by Mr. Meyer."

It was a little queer Meyer should tell Wisdom he had no accident, when he was acting as if he might have struck Brown, and

was freely telling others besides Wisdom he did strike Brown. It was also a little queer that with Meyer acting and talking as he did, Wisdom did not, for the information and protection of his company, commit Meyer to the truth by signed written statement. This court knows from reading many, many records that claim agents do that as a part of the routine of accident investigation.

After the first trial, the attorneys for plaintiff made some investigation. They applied to the insurance commissioner of this state, who applied to the insurance commissioner of New York, who applied to the insurance company for its files relating to the Brown accident. The result was, there was delivered to plaintiff's attorneys a copy of a written statement concerning the accident, signed by Meyer, in the presence of a witness, and initialed "F. M. W.," who was Frank M. Wisdom. A part of the statement reads:

"Just after I crossed Twelfth street, I struck a negro who was crossing Minnesota avenue. I did not see him at all, but my wife told me that I struck a man, so I pulled over to the north curbing and stopped. This negro was crossing Minnesota avenue, at an angle. He was about twenty feet west of the curb line of Twelfth street, and in the center of the two car tracks, when I struck him."

There was also delivered to plaintiff's attorneys a copy of a written statement concerning the accident, signed by Mrs. Meyer, in the presence of a witness, and initialed "F. M. W." A portion of that statement reads:

"On November 15, 1930, about 6 p.m., I was in a Buick sedan with Mr. Meyer when an accident happened at Twelfth and Minnesota avenue. I was seated in the front seat. My son Carl was in the back seat. . . . I did not see this colored man before the accident, but did see him just as the left front bumper struck him. He at that time was near the south rail of the west-bound street-car track. I do not know if he was standing or walking; he was carrying an umbrella. I felt a slight jar of our car, and then told Mr. Meyer that the car had struck a man. He pulled to the north or right side of the street, and stopped. He and my son went back and got the colored man and put him in the back seat, and we took him to the doctor. He told us he wanted to go to Dr. Barney's office."

By the same means, plaintiff's attorneys procured a copy of a statement concerning the accident by Carl Meyer, and copies of medical reports by Doctor Barney, Doctor Nesselrode, and two other doctors. The motion for new trial contained the following grounds:

"Misconduct of the prevailing party.

"Newly discovered evidence materially affecting said plaintiff, which she could not with reasonable diligence have discovered and produced at the trial.

"Verdict was produced by corruption of the prevailing party."

Of course, the motion was allowed.

Mr. Brady did not conduct the defense at the second trial. The record does not disclose that Wisdom was present assisting the attorney who did conduct the defense at the second trial, and he was not a witness at the second trial. Likewise, neither Meyer nor Mrs. Meyer were witnesses for the defense at the second trial.

At the second trial, Meyer was called as a witness by plaintiff, and was confronted with the copy of his statement. He said, "I do not remember any such statement." When pressed, he denied making any such statement, testified he never made any statement, and then fell back on what in many cases is pusillanimous evasion, "I cannot remember of my signing the statement."

Mrs. Meyer was called as a witness by plaintiff. When confronted with her statement, she testified:

"Q. You never made any such statement, orally or in writing, or which you have signed; is that right? A. You asked me if I made that statement to Mr. Wisdom.

"Q. Well, cut out Mr. Wisdom. Did you or did you not make any such statement as that, in substance or language? A. No, sir.

"Q. Did you make that statement or sign that statement to anybody? A. No, sir, not anybody.

"Q. On that day or at any other time? A. No, sir."

Copies of the statements of Meyer and Mrs. Meyer were admitted in evidence and, as indicated, defendant complains.

After the new trial was granted, plaintiff served a written request, addressed "To Henry C. Meyer or J. H. Brady, his attorney of record," to which copies of the statements of Meyer, Mrs. Meyer and Carl Meyer were attached, reading as follows:

"These statements the plaintiff desires to use as evidence in the trial of the above action, the originals of which statements are now in possession of your client, Henry C. Meyer, or the General Indemnity Corporation of Rochester, N. Y., which said General Indemnity Corporation of Rochester, N. Y., through you, is defending the said Henry C. Meyer in the above-entitled action by reason of a policy of insurance which was in full force and effect at the time of the accident, which policy of insurance contains the conditions that said insurance company will defend said action and protect the said Henry C. Meyer, and defend any litigation that might be brought against him on account of any accident that he might have while operating his automobile.

"The originals of these statements are in your possession or under your control, and the plaintiff, through her attorneys, requests that you admit the genuineness of said statements or produce the originals within four days from this date. In the event of your failure to admit the genuineness of these

copies within four days from this date, the plaintiff will apply to the court to use said copies as evidence in said cause."

The request was ignored. Plaintiff then made a motion, the prayer of which follows:

"Wherefore, plaintiff prays the court to make an order directing the production of said original statements as described herein before a fixed time, and in the event of the defendant's refusal to do so, that said copies attached hereto be used as evidence in the trial of said cause, the same as if they were the originals."

The motion itself contained the following:

"This request is made for the reason that the same are material evidence relating to the merits of this action and which the defendant has heretofore refused after due notice. That said original statements are necessary and material evidence in the trial of the above-entitled action, and that said defendant has refused to produce the same, although said defendant has the same in his possession or under his control, and is able to produce them as the same are in possession of the General Indemnity Corporation of Rochester, N. Y., whose agents, attorneys and representatives are defending said defendant in the above-entitled action, due to the fact that said defendant has an insurance policy containing the condition that said insurance company will indemnify and protect the said Henry C. Meyer and defend any litigation that might be brought against him on account of any accident that he might have while operating his car."

A hearing was had on this motion. Plaintiff supported the motion by affidavit of her attorney, and the court made the following order:

"Now, on this 10th day of March, 1932, comes on to be heard the above-entitled cause upon the motion of the plaintiff to produce original documents at trial, and all parties appearing, and the court being well and fully advised, finds that said motion should be sustained.

"It is therefore ordered, adjudged and decreed that the defendant herein or his attorneys and representatives are hereby ordered and directed to produce and to have at the trial of this case the following original documents and statements: Statement of Henry C. Meyer, dated November 17, 1930; statement of Carl L. Meyer, dated November 28, 1930, and statement of Mrs. Lillie A. Meyer, dated November 28, 1930. True copies of which statements have been filed and served upon the defendant's attorneys and are a part of the record in this case.

"It is further ordered that in the event said original statements are not produced at the trial of this cause, or that said defendant or his representatives or his attorneys refuse to produce the same at said time, then the said plaintiff may use in lieu of said original statements, copies of said statements in evidence in so far as said statements may be competent evidence at the trial of this cause."

When the case was called for trial, plaintiff requested production

of the original statements, pursuant to the order, and the attorney then conducting the defense stated the originals could not be produced. At the trial the copies were admitted in evidence.

The code of civil procedure contains the following sections relating to documentary evidence:

"Either party may exhibit to the other or to his attorney, at any time before the trial, any paper or document material to the action, and request an admission in writing of its genuineness. If the adverse party or his attorney fail to give the admission in writing within four days after the request, and if the party exhibiting the paper or document be afterward put to any costs or expense to prove its genuineness, and the same be finally proved or admitted on the trial, such costs and expenses to be ascertained at the trial shall be paid by the party refusing to make the admission, unless it shall appear to the satisfaction of the court that there were good reasons for the refusal." (R. S. 60-2849.)

"Either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper or document in his possession or under his control containing evidence relating to the merits of the action, or defense therein. Such demand shall be in writing, specifying the book, paper or document with sufficient particularity to enable the other party to distinguish it; and if compliance with the demand within four days be refused, the court or judge, on motion and notice to the adverse party, may in their discretion order the adverse party to give to the other within a specified time an inspection and copy or permission to take a copy of such book, paper or document; and on failure to comply with such order the court may exclude the paper or document from being given in evidence, or, if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party by affidavit alleges it to be. This section is not to be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness." (R. S. 60-2850.)

"Either party or his attorney if required shall deliver to the other party or his attorney a copy of any deed, instrument or other writing whereon the action or defense is founded, or which he intends to offer in evidence at the trial. If the plaintiff or defendant shall refuse to furnish the copy or copies required, the party so refusing shall not be permitted to give in evidence at the trial the original of which a copy has been refused. This section shall not apply to any paper a copy of which is filed with a pleading." (R. S. 60-2851.)

Defendant contends the first quoted section applies to original documents, and the penalty for noncompliance with the section is an allowance for costs and expenses in making proof. The second section relates to obtaining copy of an original and, if the taking of a copy is refused, the original shall be regarded as what the party applying for a copy alleges it to be. The last section applies to

refusal to furnish copy of an original material to the case, and the penalty for refusal is exclusion of the original from evidence. In this instance, plaintiff had what she asserted were copies of originals, and defendant contends the court had no power, by virtue of the statute, to make the order which it did make. Defendant also contends the statute applies only to a party to the action, and the insurance company was a stranger to the record.

The fact that, so far as conduct of the case was concerned, Meyer was a figurehead and the insurance company was the real party, was brought to the attention of the attorney in charge of the defense, and of the court, at the hearing on the motion for new trial, when relation of the insurance company to the case was very important. The same subject was brought to the attention of the attorney in charge of the defense, and of the court, at the hearing on the motion for production of the original documents, when the relation of the insurance company to the case was very important. In both instances the attorney in charge of the defense appeared. In both instances the relation asserted by plaintiff was proved by affidavit of her attorney. In both instances the relation asserted and proved was not denied. No objection was made to sufficiency of the evidence to prove the relation and, on the face of this record, it stands confessed that the insurance company was conducting the defense to the action. The result is, we are here concerned with procedure for obtaining benefit of existing documents in the possession of an adversary standing in the shoes of the record defendant.

When we consider the character of the papers received by plaintiff's attorneys purporting to be copies of statements relating to the Brown accident, made by Meyer and Mrs. Meyer, the circumstances under which the papers were procured, and other circumstances disclosed by the evidence, there could be no doubt anywhere, unless in a "court of justice," that the papers were in fact copies of written statements signed by Meyer and Mrs. Meyer, initialed by Wisdom, and forwarded by Wisdom to the insurance company as the result of Wisdom's investigation for the insurance company of the Brown accident. Whether the statute relating to documentary evidence was sufficient to enable plaintiff to obtain the benefit of this most important evidence, is not material. The statute establishes a procedure ordinarily adequate to the needs of litigants. When that procedure becomes inadequate, there remains inherent power in the court to get the truth. A court will exercise a sound discretion

in exercise of the power, but will not hesitate when the circumstances demand exercise of the power; and in this instance the order that the original Meyer statements be produced or that plaintiff be allowed to use the copies with the evidentiary effect of the originals, was abundantly justified.

Besides what has been said, it was agreed before the jury was called that the copies might be used. The order relating to production of the originals was read, and the following occurred:

"MR. BERGER: We are demanding that they produce these original statements at the trial, so that if they do not produce them, we can use the copies.

"MR. A. J. STANLEY: That order, as we understand it, is in the alternative, either that they be produced or the copies could be admitted as far as competent; and the defendant does not have in court the original statement, and therefore it cannot be produced.

"MR. BERGER: I suppose by this we use the copies?

"THE COURT: All right.

"MR. STANLEY, JR.: So far as competent.

"MR. BERGER: Sure."

Now, this court does not propose to indulge in any refinement respecting the meaning of the word "competent" as here used. The originals not being available, the copies were to be used, subject to whatever objection might be made to the originals.

Complaint is made that plaintiff was permitted to cross-examine and to impeach her own witnesses. It is asserted and not denied that Meyer and Mrs. Meyer did not testify at the first trial. However that may be, at the second trial plaintiff called them as witnesses, as plaintiff was privileged to do. Presumably they knew material facts of the accident, and presumably they would not trifle with their oaths. Plaintiff was privileged to conduct the examination in the light of the information afforded by the written statement. When the testimony commenced to depart from the statements, it was proper to inquire about the previous account of the accident. Indeed, such inquiry might be for the benefit of a truthful witness. When the previous account was denied, plaintiff was privileged, with consent of the court, to cross-examine, and then, if the interest of truth and justice required, to impeach. In such cases, it is the effect the testimony of the witness is likely to have on the jury that is important, and not the surprise or shock to the attorney conducting the examination. In this instance, the discretion of the court in permitting cross-examination and impeachment was righteously exercised.

The answer was a general denial. Contributory negligence of Brown was not pleaded. Accepting the evidence favorable to plaintiff, and indulging the inferences favorable to plaintiff warranted by the evidence, negligence of defendant was sufficiently established. Therefore, defendant's demurrer to plaintiff's evidence was properly overruled, and defendant's motion for an instructed verdict was properly denied. Defendant's motion for new trial was properly denied.

The judgment of the district court is affirmed.