No. 33,485

CECELIA JOHNSON, Revived in the name of CHARLES E. JOHNSON et al., *Appellees*, v. IDA HAGER, *Appellant*.

(83 P. 2d 621)

462

Opinion filed November 5, 1938.

*Eustace Smith* and *Harry H. Dunn,* both of Hutchinson, for the appellant

*John A. Etling,* of Kinsley, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover $5,000 damages for each of four allegations of slander and $10,000 punitive damages, making a total of $30,000. It was brought by a sister-in-law of the defendant.

The first cause of action alleged that defendant charged plaintiff on May 30, 1936, with murdering her own husband and her mother-in-law, who were the brother and mother of the defendant, by saying in the cemetery in the hearing of others, "Right there are your victims, you murdered them." The second cause of action charged defendant with calling plaintiff, in the Edwards county courthouse, in the hearing of others on August 29, 1935, an unspeakable name, and adding "you killed her." The third count charged her with telling a certain banker in the city of Lewis, Kan., in the fore part of August, 1935, that the plaintiff was a thief and a robber. The fourth count charged defendant with telling many other persons in her home near Belpre, Kan., in the fore part of December, 1935, that plaintiff poisoned her husband, her mother-in-law and Lloyd Switzer by putting poison in their food. All these counts contained the usual allegations as to the statements being made willfully and maliciously and with full knowledge on the part of the defendant of the falsity of such statements and with the purpose of injuring the plaintiff in reputation and otherwise.

After the filing of a general denial a trial was had and the jury returned a verdict in favor of the plaintiff and against the defendant for $600. Judgment was rendered accordingly, the motion for new trial was overruled, and from that judgment and ruling the defendant has appealed. The plaintiff has died since the appeal was taken to this court and the case has been revived in the name of the heirs at law of the plaintiff.

There are three questions of law involved in the appeal, counting the ruling on the motion for new trial. The other two are, permitting the plaintiff's attorney to cross-examine one of plaintiff's witnesses because her testimony did not correspond with statements made by her to plaintiff's attorney shortly before the trial, and the

other was the introduction of testimony from a doctor and the coroner, which was claimed by the defendant to have been privileged communications between them and the defendant professionally and officially.

Taking up the latter point first, it must be stated that the doctor was not claimed to be a family physician, but the privileged feature was based upon the right and duty of the defendant, if in good faith, to talk to and invoke the assistance of the physician and the coroner with reference to the making of a post-mortem examination of the body of defendant's mother to discover whether or not poison was the cause of her death. There is a recognized privilege in communicating with officers and others where one thinks he has a duty to perform along that line, but it should not be prompted by any element of bad feeling or malice against the party accused. It is said in 36 C. J. 1243:

"The duty or interest on which the privilege is founded must actually exist; the privilege depends, not on what the individual may have supposed to be his interest or duty, but upon what the court decides, as a matter of law, his interest or duty to have been."

On the subject of qualified privileged communications it is said in 17 R. C. L. 341:

"In the absence of malice an utterance may be qualifiedly privileged, even though it is not true, and notwithstanding the fact that it contains a charge of crime. But mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates defamatory matter. Hence, a publication loses its character as privileged, and is actionable, on proof of actual malice, or, at least, such gross disregard of the rights of the person injured as is equivalent to malice in fact."

It was also held in the case of *Mueller v. Radebaugh*, 79 Kan. 306, 99 Pac. 612:

"A communication to an officer of the law charging a person with a crime, made in an honest effort to recover stolen property and for the purpose of detecting and punishing the criminal, is privileged.

"In an action for slander based upon such communication, where there is no evidence of malice, a demurrer to the evidence is rightly sustained." (Syl. ¶¶ 1, 2.)

There was evidence in the case tending to show an unfriendly feeling between the original plaintiff and defendant. The plaintiff testified that she had not associated with the defendant during the last seven years. One other witness, George L. Fell, after stating what he heard defendant say about the original plaintiff, further said: "I have heard there is bad blood in the Johnson family. I paid no at-

tention to what Ida said." The defendant herself said of the original plaintiff that she had been her hired girl before she married her brother, Gus, but admitted that the original plaintiff had conceived a feeling against her. Others said they heard defendant refer to plaintiff as "an in-law." There was sufficient proof along the line of unfriendliness to justify the court in permitting such evidence, although under the above-quoted authorities the communications might have been privileged. (See, also, *Gregory v. Nelson,* 103 Kan. 192, 173 Pac. 414.)

Error is claimed by the appellant to have been made by the trial court in permitting the plaintiff to cross-examine Anna Graf, a witness called by the plaintiff. The evidence shows that this witness was a niece of both parties. She testified fully and freely about being present in the cemetery, the courthouse and other places at times when certain statements were claimed to have been made by the defendant. This witness could tell in detail the names of those that were present at the time and many of the surrounding circumstances, but could not remember what the defendant said. Many questions were asked her to afford her an opportunity to testify as to statements made by defendant, but to no effect. Then she was cross-examined by attorney for plaintiff as to statements made by her to him in his office shortly before the trial, some of which she admitted. Of course one is not generally allowed to impeach one's own witness and no attempt was made toward that end, but if the answers to former questions show a witness to be unwilling or hostile a different rule prevails, and the court may, under such showing, permit cross-examination of one's own witness. Appellant cites the general rule on this subject as stated in the first part of paragraph 781 in 70 C. J. 615, where it is said: "A party has no right to cross-examine his own witnesses; . . ." But later in the same paragraph the exception to the general rule is stated as follows:

"Where, however, the witness is hostile, it is within the discretion of the court to allow the party calling the witness to cross-examine him."

It was held in *State v. Parks,* 133 Kan. 568, 1 P. 2d 261, that—

". . . it is well settled that where a witness is evasive or uncandid when being examined by the party calling him, he may be cross-examined, and the extent to which this may be done is left to the sound discretion of the trial court." (p. 569.)

In *State v. Cole,* 136 Kan. 381, 15 P. 2d 452, it was held:

"Where a witness is put on the stand by the state and it becomes apparent that he is an unwilling witness and is not telling the same story that he told

before, and that the prosecuting attorney is surprised, it is proper for the court to permit the prosecuting attorney to cross-examine the unwilling witness." (Syl. ¶ 4.)

In *State v. Terry*, 98 Kan. 796, 161 Pac. 905, it was held:

"Where witnesses called to testify in behalf of a party give testimony contradictory of former testimony and inconsistent with previous statements, the party calling them may be permitted to cross-examine them and call their attention to their former evidence and statements, and may also offer testimony which contradicts and impeaches their present testimony." (Syl. ¶ 2.)

This is not limited to criminal cases, as is shown in *Lassen v. Marland Production Co.*, 133 Kan. 313, 299 Pac. 947, where the cross-examination even bordered upon impeachment of the witness, and it was held to be in the sound discretion of the trial court.

In 28 R. C. L., 601, it is said:

"An adverse witness may be cross-examined, and leading·questions may be put to him by the party calling him, for the very sensible and sufficient reason that he is adverse and that the danger arising from such a mode of examination by the party calling a friendly or unbiased witness does not exist. The right to cross-examine in such a case, however, is not absolute, but rests in the discretion of the trial judge."

We find plenty in the testimony of this witness, Anna Graf, to show she was an unwilling witness for the plaintiff and hostile to the cause of the plaintiff, and there was no abuse of discretion on the part of the trial court in permitting plaintiff's attorney to cross-examine her as to former statements made to him. Reference is also made to an error in introducing written statements made by another witness, but it is not claimed that witness was an unwilling one or was being cross-examined. She was regularly cross-examined by the defendant as to some inconsistencies in her statements and testimony.

We find no error in overruling the motion for a new trial. The judgment is affirmed.