No. 42,076

RICHARD RILEY and DESSIE RILEY, *Appellants,* v. GAYLE JOE HOLCOMB, *Appellee.*

(359 P. 2d 849)

Opinion filed March 4, 1961.

*D. O. Concannon,* of Hugoton, argued the cause and was on the briefs for the appellants.

*Evart Mills*, of McPherson, argued the cause, and *Bernard E. Nordling*, of Hugoton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action by the parents of a nine-year-old boy to recover damages for his wrongful death. The district court sustained the defendant's demurrer to the plaintiffs' evidence in support of allegations based on the last clear chance doctrine, and on the theory of the defendant's gross and wanton negligence. The issue of the defendant's negligence was submitted to the jury which returned its verdict in his favor. The plaintiffs here frankly concede that, based on the evidence and instructions as submitted to the jury, it was justified in finding for the defendant.

The specifications of error are based entirely upon alleged erroneous rulings by the district court upon objections to plaintiffs' evidence, and to instructions requested by plaintiffs and refused by the court.

Only two persons saw the accident—the defendant driver, and the deceased boy. Hence, the plaintiffs were placed in the unenviable position of being unable to call an eyewitness to the accident, other than the defendant. During his direct examination as their witness, they were refused the right to refer to a written signed statement he made to their counsel in his attorney's office prior to the trial about how the accident occurred and what he did to avoid it. That, is specified as error.

The contention requires an examination of the defendant's testimony as a witness for the plaintiffs, and of material portions of his prior written statement.

The accident occurred on U. S. Highway No. 56 about one-half mile east of Rolla between 3:00 and 4:00 o'clock in the afternoon of January 17, 1959. The nine-year-old boy, Gary Leonard Riley, was walking west along the south edge of the east-west highway. He was wearing a parka coat with the hood zipped over his head and was carrying an air rifle. The defendant, Gayle Joe Holcomb, testified that he was driving a 1953 Lincoln automobile west on the right-hand or north side of the highway; that before the accident he had probably driven the car 100 miles an hour; that as he approached Rolla he saw a person walking west along the south side of the highway about a half mile in front of him; that he took his foot off the accelerator and started slowing down; that when he was about

a quarter of a mile from the person, he could tell it was a small boy because he was taking short steps and was carrying a gun; that he thought he put his foot on the brake, but did not slide his wheels; that at that time the boy was walking west about three feet from the south edge of the black-top pavement; that the boy started to run and ran west for not over ten yards, then he applied his brakes real hard and honked his horn as the boy was running in a straight line before he started across the highway, and that all of a sudden the boy started running fast at an angle toward the northwest and struck the defendant's car. He testified that when the boy came close to him, his horn was honking and his tires were squealing; that the boy hit the car "right even with the fender and went up over the hood from the hips up"; that he did not know how fast he was going at the time contact was made with the boy; that he took his foot off the brake and got out before the car stopped, and that he did not know exactly where the point of impact was but thought his right wheels were in the mud or on the shoulder of the road. He further testified that upon impact, the boy did not bounce away; that "he came upon the front of the car fender and went right on back"; that he never saw the boy's face until he hit the car and that the boy never saw him before he hit the fender, and that after the accident the boy was lying on the yellow line in the center of the highway.

In his prior written statement the defendant stated that he was about a quarter of a mile away when he noticed that the person on the south side of the highway was a boy and he took his foot off the accelerator; that he observed the boy was walking and all of a sudden he started trotting west on the south side of the highway and that was when he started putting on his brakes; that he was "probably 50 or 75 yards [back of the boy] when he started trotting; that the boy ran about ten yards down the highway before he started angling; that the boy was still on the south side of the highway and then "he broke into a pretty good run across the highway and that is when I was completely on my brakes and started honking my horn"; that after the collision over half of the boy's body was over the car and on the hood directly in front of the defendant, and "then all of a sudden he just came back real fast—I think the wheel caught his foot or something and it jerked him back. When it jerked him back his head hit the mirror [rear view mirror fastened to the left front door]," and that his car was three-quarters in the ditch at the point of impact but that the boy was lying on the yellow line in the center of the highway.

As noted, on direct examination the defendant emphasized that he sounded his horn as the boy was trotting in a straight line before he started across the highway, and that he thought his right wheels were in the mud or on the shoulder of the road at the point of impact. In his written statement he stated that when the boy started to run across the highway that was when he completely braked his car and started honking his horn, and that his car was three-quarters in the ditch at the point of impact. Under the peculiar circumstances of this case, the inconsistencies in the defendant's statements were neither light nor trivial.

In support of the district court's ruling precluding the plaintiffs from cross-examining the defendant concerning the facts of the accident as disclosed in his written statement, the appellee relies upon the general rule that a party has no right to cross-examine his own witness. One of the recognized exceptions to the rule is that where the witness is hostile, which the plaintiffs concede the defendant was not, or when it appears that a party is surprised by the testimony of a witness he has called, it is within the discretion of the court to allow the party calling the witness to cross-examine him (*Johnson v. Leggett,* 28 Kan. 590; *Johnston v. Marriage,* 74 Kan. 208, 212, 86 P. 461; *Steele v. Woodmen of the World,* 115 Kan. 159, 222 P. 76). The rule is enforced in this state where there are no *special circumstances* which would make its application work an injustice (*State v. Keefe,* 54 Kan. 197, 38 P. 302; *Johnston v. Marriage,* supra, p. 213). In *State v. Terry,* 98 Kan. 796, 161 P. 905, it was held:

"Where witnesses called to testify in behalf of a party give testimony contradictory of former testimony and inconsistent with previous statements, the party calling them may be permitted to cross-examine them and call their attention to their former evidence and statements, and may also offer testimony which contradicts and impeaches their present testimony." (Syl. ¶ 2.)

The rule is not limited to criminal cases. See *Lassen v. Marland Production Co.,* 133 Kan. 313, 299 P. 947, and *Johnson v. Hager,* 148 Kan. 461, 83 P. 2d 621 where the cross-examinations bordered upon impeachment of the witness.

In the instant case the plaintiffs called their adversary, who was the only eyewitness to the accident, as a witness in proof of his negligence, and a wide latitude of examination should have been permitted (*Wallach v. Wylie, as Sheriff,* 28 Kan. 138, 149; *Griffis v. Whitson,* 3 Kan. App. 437, 43 P. 813). Physical evidence alone could not establish a complete cycle of events leading up to the accident. What the defendant did to avoid the accident, and when

he did it, was the very essence of plaintiffs' case. The relative distances involved, the speed of the defendant's car, where the boy was when the defendant braked his car and sounded his horn, and where the car was at the point of impact, together with other pertinent matters, were material facts. The plaintiffs were privileged to conduct their direct examination in the light of the information afforded by the defendant's written statement. When his testimony commenced to depart from his written statement, it was proper to inquire about his previous account of the accident. If those facts were not fully developed, under the special circumstances here presented, the application of the rule prohibiting a party from cross-examining his own witness would work an injustice (*State v. Keefe*, supra; *Johnston v. Marriage*, supra, p. 213). Indeed, the district court's invocation of the general rule prevented the jury from having an explanation of the inconsistencies in the defendant's testimony essential to enable it to determine whether the defendant operated his car in a negligent manner. The plaintiffs were undoubtedly surprised by the defendant's testimony, but more than that, in the interest of truth and justice, the district court might properly have permitted the plaintiffs to cross-examine the defendant concerning the facts of the accident as related in his written statement (*Brown v. Meyer*, 137 Kan. 553, 561, 21 P. 2d 368). In cases such as this, it is the effect the testimony of the witness is likely to have on the jury that is important, and not the surprise or shock to the attorney conducting the examination. A new trial is being ordered for other reasons, and when the case is retried, upon plaintiffs' request, we think the district court should in the exercise of its sound judicial discretion, permit the plaintiffs to cross-examine Holcomb since an inherent function of a court is to get the truth. See *State v. Hughes*, 8 Kan. App. 631, 56 P. 142; *Wallach v. Wylie, as Sheriff*, supra; *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kan. 412, 11 P. 408; *Lassen v. Marland Production Co.*, supra; *Johnson v. Hager*, supra, and *State v. Maxwell*, 151 Kan. 951, 964, 102 P. 2d 109.

The plaintiffs next specify that the district court erred in overruling their objection to the testimony of Carl McDonald, a highway patrolman, concerning the speed of the defendant's car. On direct examination McDonald testified he was 24 years old and had been a trooper for eighteen months at the time of the accident; that he and Trooper Anderson investigated the accident and he helped Anderson measure the skid marks; that from the beginning

of the skid marks to where the right wheels left the highway it was a distance of 144 feet and that there were 257 feet of skid marks from their start to the back of the defendant's car; that the skid marks were darker just before they left the pavement, and that the defendant's brakes were locked when the car was stopped. He further testified that the highway was asphalt, in good condition, and dry; that the boy's body was ten feet from the north side of the highway and fourteen feet from the south side, and that the defendant told him he was going 50 miles per hour.

On cross-examination he was asked if he had an opinion, from his experience and his examination of the skid marks, whether he doubted the statement of the defendant as to his speed. The district court sustained plaintiffs' objection, but advised counsel for the defendant that he might inquire what the witness' opinion was if he formed one. The witness was asked whether he had formed an opinion and he stated that he had. The plaintiffs objected to his answering unless it was shown what he based his opinion on. The objection was overruled and the witness answered, "in my opinion he was not going over 70 miles per hour, which is the speed limit in Kansas." Upon redirect examination the witness testified that he did not have any physical fact to show that the defendant was not driving over 70 miles an hour, stating, "I don't need one to form an opinion. I did not necessarily base my opinion upon evidence I found at the accident." When plaintiffs' counsel asked, "Then your opinion is not based upon any evidence at all but merely upon your own conjecture in what you think might have happened," the witness replied, "Well, to the best of my knowledge and what I remember, I don't remember why I formed that opinion." The witness was then asked, "You didn't attempt to take the skid marks and run them against your manual? You do study the manual don't you?" To which counsel for the defendant objected that he was cross-examining his own witness, and the court sustained the objection. When asked by the court the purpose of examining the witness with respect to the manual, counsel for the plaintiffs stated that the witness testified he studied the manual, and that counsel was trying to find out how he arrived at his opinion. The court again sustained the objection. We think that was error.

This court has held that where a proper foundation is laid, a witness qualified as an expert may give his opinion based upon the length of skid marks, location of wrecked vehicles, damage to vehi-

cles and independent tests, as to the speed of an automobile involved in an accident, the weight to be given such evidence, of course, being a matter for the jury to determine (*Cherry v. State Automobile Insurance Association,* 181 Kan. 205, 310 P. 2d 907; *Foreman v. Heinz,* 185 Kan. 715, 347 P. 2d 451; *Johnson, Administrator v. Huskey,* 186 Kan. 282, 350 P. 2d 14). In this case the witness testified that he did not base his opinion upon evidence found at the accident, and that he did not remember why he formed his opinion that the defendant's speed did not exceed 70 miles per hour. We think the court unduly restricted plaintiffs' examination of the witness with respect to whether he had studied the manual, and if he had whether he applied the information obtained at the scene of the accident to the scientific findings stated in the manual. As the record stands, the opinion of the witness should not have been submitted for the jury's consideration.

The plaintiffs next contend that the district court erred in refusing to submit their requested instructions Nos. 1, 2 and 7, which read:

"No. 1. You are hereby instructed that in reference to the defense of contributory negligence pleaded by the defendant, Gayle Joe Holcomb, that the care required of Gary Leonard Riley depends upon his age, knowledge, capacity, experience, maturity, and intelligence. The question is whether Gary Leonard Riley acted as a child of his age and of his capacity, discretion, knowledge, and experience would have acted under the same or similar circumstances. Boys will not be charged with negligence when they merely follow the irresistible impulses of their own natures, instincts common to all boys. In many cases where men, or boys approaching manhood, would be held negligent, younger boys, will not be.

"In determining the question of negligence on the part of Gary Leonard Riley you must consider all of the facts from the evidence in this case and if he acted as an ordinary boy of his age, capacity, discretion, and experience would have acted under similar circumstances he will not be charged with negligence.

"No. 2. A driver of a motor vehicle who sees that one or more children are in the street or highway must exercise a great or high degree of care or caution. When approaching children in the street the driver should be alert, attentive, and vigilant; he should maintain a proper lookout and sound a warning of his approach. He shall not operate his vehicle at a high and dangerous rate of speed and must keep his vehicle under control. He must recognize the fact that children may sometimes attempt to cross the street, unmindful of its dangers, and is required to keep his car under such control as the circumstances demand.

"No. 7. You are hereby instructed that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any highway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child upon a roadway."

It may not be said the district court erred in refusing to give requested instruction No. 1. Considered in its entirety, it did not contain a correct statement of the law. While the first two sentences of the first paragraph and the second paragraph of the request correctly stated the law under the evidence presented, the third sentence of the first paragraph tended to invade the province of the jury by advising it that boys will not be charged with negligence if they merely follow the "irresistible impulses of their own natures, instincts common to all boys," when the question to be determined from all the evidence was whether the boy in question exercised the degree of care and caution which a boy of like age, capacity, discretion, knowledge and experience is ordinarily expected to exercise under like circumstances. Moreover, the last sentence of the paragraph was improper because it stated that men, or boys approaching manhood, would be held negligent, when young boys will not be, which was a mere conclusion and of no assistance to the jury. It is settled that the law with respect to the negligence of an adult is quite different than that of a child of tender years (*Weber v. Wilson*, 187 Kan. 214, 356 P. 2d 659, and cases cited). In that case it was said:

". . . Children of tender years are not held to the same strict accountability of an appreciation of danger and of need for care of themselves as persons of full age, but are required to exercise such care as persons of their age, experience, capacity and intelligence are ordinarily expected to exercise under like circumstances. . . ." (l. c. 220.)

In the instant case it is entirely possible that the jury might have found that what the boy did was what a boy of like age, capacity, discretion, knowledge and experience would ordinarily do under like circumstances, and that in doing what he did, he was merely following his irresistible impulses, an instinct common to all boys. But, to advise the jury that boys will not be negligent if they merely follow their irresistible impulses, instincts common to all boys, is an incorrect statement of the law.

The defendant contends that the court's instructions Nos. 3 and 13 substantially stated the measure of a child's standard of conduct who is charged with contributory negligence, and that the refusal to give requested instruction No. 1 in the specific manner requested was not error. The court's instruction No. 3 dealt with the question of the boy's alleged contributory negligence as though he were an adult, and after ten intervening instructions, advised the jury

in instruction No. 13 that the law as to the negligence of children is that they are required to exercise only that degree of care and caution which persons of like age, discretion, and so forth, might be reasonably expected to naturally and ordinarily use in the same situation and under like circumstances. While it is the rule in this state that instructions to the jury must be considered as a whole, and all must be considered to determine whether the theory and contentions of each party are presented (*Casner v. Common School District No. 7*, 175 Kan. 551, 265 P. 2d 1027), we think that in instructing a jury in a case where a child of tender years is charged with contributory negligence of an act which resulted in his injury or death, the court has the duty to frame its instructions so as not to refer to the law of contributory negligence applicable to an adult, but in one complete instruction, advise the jury of the law of contributory negligence applicable only to a child of tender years.

Requested instructions Nos. 2 and 7 were predicated upon G. S. 1949, 8-557, and when considered together, it cannot be said the district court erred in refusing to give instruction No. 2 in the form submitted, but we think it was error to refuse to give instruction No. 7. The statute reads:

"(*a*) Every pedestrian crossing a roadway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. (*b*) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway. (*c*) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk. (*d*) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, *and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.*" (Emphasis supplied.)

It is clear that subsections (*a*), (*b*) and (*c*) of the statute do not apply to the facts presented by this record, but we think subsection (*d*) is applicable. Requested instruction No. 7 was taken directly from the statute, and the court's instructions were inadequate in that particular. The plaintiffs were entitled to have the instruction given, and the court erred in refusing to instruct the jury as requested.

We are of the opinion that the district court erred in overruling the plaintiffs' motion for a new trial, and that order is reversed.

It is so ordered.