THE STATE OF KANSAS v. GUY WELLINGTON.

1. MURDER — *Letter in Evidence, Error — Impeachment.* In a criminal prosecution, a letter was introduced in evidence by the state, over the objections of the defendant. This letter had previously been addressed by the defendant's mother to the defendant in an assumed name, but it does not appear that the defendant ever received the same. The letter could have rightfully been introduced in evidence for the purpose of impeaching the testimony of the mother, who testified on the trial as a witness for the defendant, and for that purpose only; but the record apparently shows that it was introduced upon the merits of the case, and for the purpose of tending to prove the defendant's guilt. Afterward the defendant asked the court to instruct the jury that the letter could be considered by the jury only for the purpose of contradicting or impeaching the testimony of the mother, and the court refused to give such instruction. *Held,* Error.

2. WITNESS *for State, not Called — No Error.* The mother's name was indorsed upon the information as a witness for the state, and she and the defendant were the only persons then living who were present at the time of the commission of the acts for the commission of which the defendant was charged with committing the offense. The mother being present, and the state not introducing her as a witness, the defendant requested the court to require the state to call her as a witness on behalf of the state, and the court refused the request. *Held,* Not error.

*Appeal from Morris District Court.*

PROSECUTION for murder in the first degree. Trial at the adjourned April term, 1889, and conviction for murder in the second degree. The material facts are stated in the opinion.

*Miller & Ritchie, Maloy & Kelley,* and *Robinson & Lawrence,* for appellant.

*L. B. Kellogg,* attorney general, *J. K. Owens,* county attorney, and *T. N. Sedgwick,* for The State.

The opinion of the court was delivered by

VALENTINE, J.: The defendant, Guy Wellington, was prosecuted for murder in the first degree, and was convicted of and sentenced for murder in the second degree; and from such conviction and sentence he now appeals to this court. In all probability, from the evidence introduced on the trial, the verdict and sentence are correct; and yet for error occurring during the trial, the judgment of the court below must be reversed. During the trial, which was before the court and a jury, a letter from the defendant's mother, Anna B. Crandall, addressed to him under the assumed name of G. A. Mitchell, was introduced in evidence. It does not appear that the defendant ever received the letter, or saw it at any time before the trial. At the close of the evidence the defendant's counsel asked the court to instruct the jury among other things as follows:

"20. The court instructs the jury that the letter put in evidence by the state and written to the defendant by his mother, was only permitted to be received and read in evidence for the purpose of contradicting or impeaching any testimony given by the mother on the witness stand, and for no other purpose, and can only be considered by the jury for that purpose — it cannot be considered as defendant's act, or to criminate him."

This instruction the court refused to give, and the defendant

excepted; and this refusal is now assigned for error. On the oral argument in this court the county attorney stated that this letter was introduced in evidence only for the purpose of impeaching the testimony of Mrs. Crandall, and for no other purpose; but unfortunately for the interests of the prosecution, the record does not so show, and apparently shows that the letter was introduced over the objections of the defendant, upon the merits of the case, and for the purpose of tending to prove the defendant's guilt. If it was introduced only for the purpose of impeaching the testimony of Mrs. Crandall, and if it had been so stated to the jury at the time of its introduction, so that the jury could not have been misled, then no error would have been committed by the court in refusing to give the foregoing instruction. With regard to this letter, counsel for the defendant say in their brief as follows:

"This letter was one which the jury might, in ignorance of the fact that it was competent only to contradict Mrs. Crandall, give an effect that was very unjust to the defendant; and the refusal of the court to give it [the instruction] we regard as an unfortunate error on the part of the court, which must have left the minds of the jury greatly prejudiced against the defendant."

If the letter was in fact used as evidence upon the merits, it was certainly very damaging to the defendant's case; and the record apparently shows that it was so used; and when the facts are disputed, we can be governed only by the record.

As this case must be remanded to the district court for a new trial, it would perhaps be well for us to refer to some other matters presented as errors by counsel for the defendant.

We think the information is sufficient, and no error was committed by the court in permitting the county attorney to indorse the names of additional witnesses upon the information.

We do not think that the court erred in refusing the request of the defendant to require the state to call Mrs. Crandall as a witness on behalf of the state. It is true her name was indorsed as a witness upon the information; and it is also true

that she and the defendant were the only persons living at the time of the trial who were present at the time of the commission of the acts by the defendant, for the commission of which he is now charged with committing murder. E. E. Crandall was the victim of the homicide; Mrs. Anna B. Crandall was his wife; and the defendant, Guy Wellington, who was then about 26 years old, was Mrs. Crandall's son, and Crandall's step-son. Crandall died from the effects of a pistol-shot fired by the defendant, and these three persons were the only persons present at the time when the shooting was done. The state gave excellent reasons for not calling Mrs. Crandall as a witness. Indeed it would have been extremely foolish for the state, knowing what its counsel then knew, or believed, to have called Mrs. Crandall as a witness. Mrs. Crandall, however, was a witness at the trial. She was introduced as a witness on behalf of the defendant. But as this permitted the state to impeach her testimony, and as the state did in fact to a great extent so impeach it, her testimony, so far as it differed from that of the other witnesses, or so far as it was favorable to the defendant, was probably considered by the jury as of but very little value.

It is also claimed that the court below erred in admitting in evidence a written statement of what purported to be a dying declaration of Mr. Crandall. It would seem from the authorities, that to admit statements of the victim of the homicide as dying declarations, "they must be made not merely *in articulo mortis,* but under the sense of impending death, without expectation or hope of recovery." (6 Am. & Eng. Encyc. of Law, 107, and cases there cited; 1 Bish. Cr. Proc., §1212.) Now it is thought by this court, or at least by a majority of its members, (the writer of this opinion having doubts,) that it has not been sufficiently shown in this case that the supposed dying declaration of Crandall was in fact made "under the sense of impending death, without expectation or hope of recovery;" and therefore it is thought that it was not admissible as a dying declaration. With a proper foundation laid, however, it might have been introduced as

impeaching testimony so far as it impeached the testimony of
Mrs. Crandall, for she admitted at the time that it was made
that it was true and correct, and undoubtedly it was true and
correct so far as it tended to show guilt on the part of the de-
fendant; but it was not introduced as impeaching evidence,
but was introduced as a dying declaration.

The judgment of the court below will be reversed, and the
cause remanded for a new trial.

All the Justices concurring.