THE KANSAS & NEW MEXICO LAND AND CATTLE
COMPANY v. GEORGE A. THOMPSON et al.

No. 9409.

1. APPELLATE PROCEDURE—*error without prejudice no ground for reversal.* Mere formal errors, which evidently do not materially prejudice the defeated party, do not afford sufficient ground for a reversal of a judgment.

2. INDIAN LANDS—*one in possession of, with consent of Indians, may recover for pasturing cattle on.* In an action by one in possession of a tract of land in what is known as the Cherokee Outlet, to recover as upon a *quantum meruit* for pasturing and caring for cattle delivered to him for that purpose by the defendant, where there is no showing that he was in possession of the land without the consent of the Indians, he may recover the reasonable value of the service rendered. The question whether his lease from the Cherokees, if he had one, was valid as against the Indians, or the government of the United States, is not controlling. If his possession was with the consent of the Indians, it was lawful, so long as that consent continued and the government of the United States acquiesced in it; and a party employing him to graze cattle must pay for the pasturage.

*Error from Sedgwick District Court.*
*Hon. C. Reed, Judge.*

AFFIRMED.                           OPINION FILED MARCH 6, 1897.

*T. B. Wall* and *C. H. Brooks,* for plaintiff in error.

*W. E. Stanley* and *J. L. McAtee,* for defendants in error.

ALLEN, J.   This action was brought by the Cherokee Strip Live Stock Association and George A. Thompson against the Kansas & New Mexico Land and Cattle Company to recover damages on a contract for pasturing cattle in a pasture in possession of Thompson, in what is known as the Cherokee Outlet, in the Indian Territory. The petition, as originally filed, contained two counts. The first set up a written contract between the parties, alleged a failure

of performance on the part of the defendant, and asked judgment for damages therefor. The second was for work and services alleged to have been rendered by Thompson to the defendant. The petition alleged the assignment of a part of Thompson's claim by him to the Live Stock Association. A demurrer was filed to the petition, which the court overruled. Thereupon a long answer was filed by the defendant. On the 19th of November, 1892, the case was called for trial, a jury impaneled, and a statement of the case made by counsel for the respective parties. When the first witness on behalf of the plaintiffs was called, the defendant objected to the introduction of any evidence, on the ground that the facts stated in the petition were insufficient to constitute a cause of action. The objection was sustained. Thereupon leave was granted the plaintiffs to file an amended petition. On the 5th of December following, the amended petition was filed, setting up three causes of action. The first two were substantially the same as those contained in the original petition. The third alleged that the plaintiff Thompson was in the possession and occupancy of a valuable pasture in the Indian Territory, containing 77,312 acres in the Cherokee Outlet; that, on the 17th of July, 1889, the defendant requested Thompson to take, and that he did take, into the pasture 860 head of cattle to graze; that he kept them 15 months, and then returned and delivered them to the defendant; that the grazing and care of the cattle were worth $3.50 per head; that $3,100 of his claim was assigned to the Cherokee Strip Live Stock Association, for which it asked judgment. To this petition the defendant demurred. The demurrer was sustained as to the first and second causes of action, and overruled

as to the third. Thereupon the defendant filed a long answer, setting up many matters by way of defense, and alleging, among other things, the delivery by the defendant to the plaintiff Thompson of 939 head of cattle to be pastured, and that only 860 had been returned; and that the plaintiff had converted the balance of 79 head to his own use. An affirmative judgment was demanded against the plaintiff Thompson for $6,285. The record then recites: "Whereupon, on said 5th day of December, 1892, the said court ordered said action to proceed to trial on said third cause of action stated in the amended petition, before the same jury. To which ruling and order the defendant at the time objected and excepted." The trial then proceeded, and testimony was offered at length by both parties. The second assignment of error, which logically comes first, is, that the court erred in permitting the amendment and then ordering the parties to proceed with the trial. There is nothing in the record showing that the defendant claimed that it was not ready for trial, nor do the proceedings indicate that the defendant was taken by surprise. The claim of error rests solely on the proposition that the issues, having been but just made up, were not triable at that term of the court; and especially in view of the fact that a demurrer was sustained to the first two counts in the petition, leaving only the third, which was not contained in the original petition, as plaintiffs' sole cause of action.

It is clear that the defendant was not surprised by the claim set up in the third cause of action, for in the first count in the original petition the fact of the delivery of 939 head of cattle was alleged; but it was alleged to have been under the written contract.

The original petition was filed on the 16th of February, 1891, in the Court of Common Pleas. On the 23d of December, the cause was transferred by order of the Court of Common Pleas to the District Court of Sedgwick County. Whether the subsequent proceedings in the case were such as to make the action triable at that term of court, under the ruling in the case of *Daugherty v. Porter*, 18 Kan. 206, we do not deem it necessary to pass upon; as the objection interposed by the defendant was too general, and failed to challenge attention to the question whether the issues were made up 10 days before the first day of the term. The defendant appears to have been prepared, not merely to defend against the plaintiffs' claim, but also with evidence in support of its counterclaim. On the record, as presented, we cannot say that substantial error in this particular was committed.

Error is alleged in a sentence of the instructions, which apparently cast the burden on the defendant to

1. Error without prejudice no ground for reversal.

show, in support of its counterclaim for the 79 head of cattle received by the plaintiff Thompson which he failed to return to the defendant, that they were lost through his negligence. The sentence, standing alone, would seem to be erroneous; but in other parts of the instructions the court fully and explicitly informed the jury that if 939 head of cattle were delivered to Thompson, and only 860 were returned to the defendant, the burden of proof rested on the plaintiffs to show that the cattle were lost through no negligence on his part, and that, if they failed to make such showing, the defendant would be entitled to recover the fair market value of the cattle not so accounted for. The objectionable sentence occurs in connection with

the statement that it was necessary for the defendant to maintain its counterclaim for damages by a preponderance of the testimony. We are clear that the jury could not have been misled in this particular, for correct, full, and explicit instructions on this point were given and reiterated by the court.

The main contention in the case is that the contract between the parties was an illegal one; that Thompson could not take a valid lease of lands in the Cherokee Outlet, nor enter into a valid contract with the defendant to pasture its cattle. It was upon this view of the law that the District Court sustained the demurrer to the first and second causes of action stated in the plaintiffs' petition. The court, however, sustained the plaintiffs' third cause of action, and held that they could recover for the services actually rendered. This ruling was sound. Though Thompson may not have had a valid lease of the large tract of land in his possession, it does not appear from the record that he was violating any law in taking cattle to pasture thereon. Section 2117 of the Revised Statutes of the United States provides that "every person who drives, or otherwise conveys any stock of horses, mules, or cattle, to range and feed on any land belonging to any Indian, or Indian tribe, without the consent of such tribe, is liable to a penalty of $100 for each animal of such stock." It nowhere appears in the record in this case that Thompson was in possession of this land, or took these cattle there, without the consent of the tribe. The argument in the brief for plaintiff in error is to the effect that the written contract between the parties was invalid under sections 2103 and 2116 of the Revised Statutes of the United States, which declare

2. One in possession of Indian lands may recover pasturage.

Opinion of the Court.

grants and leases of Indian lands of no validity unless made in accordance with a treaty or convention entered into pursuant to the Constitution.  It may be conceded that, under these sections, whatever lease Thompson had was void, yet it does not necessarily follow that he violated any law, or subjected himself to any penalty, by taking cattle there to graze, if done with the consent of the Indians.  This view is fully sustained by Judge BREWER in the case of *United States v. Hunter*, 21 Fed. Rep. 615.  The language of section 2117, above quoted, implies that Indians and Indian tribes may consent to have stock graze on their lands.  Conceding that Thompson had at no time a right, as against the Indians or the government of the United States, to continue in the occupancy of the land, if he was there with the consent of the Indians, and in fact rendered the service to the defendant of caring for and feeding its cattle, he was entitled to compensation therefor.  The trial court held that he could not recover the contract price, but that he could recover as upon a *quantum meruit* for the reasonable value of the pasturage and his services in caring for the cattle.  It is not entirely clear that the compensation should not be measured by the contract.  But as the recovery did not exceed the stipulated price, the defendant had no cause of complaint on this ruling of the court.  On the whole, the case seems to have been fairly tried, and the judgment is affirmed.

All the Justices concurring.