No. 35,669

THE STATE OF KANSAS, *Appellee*, v. NELSON APPLEBY, *Appellant*, et al.

(130 P. 2d 568)

Opinion filed November 7, 1942.

*J. W. Dalton*, of Sedan, argued the cause, and *C. W. Spencer*, of Sedan, was on the briefs for the appellant.

*John M. Wall*, county attorney, argued the cause, and *Jay S. Parker*, attorney general, and *William P. Timmerman*, assistant attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant was convicted, on two counts, of stealing chickens in the nighttime, and sentenced on each count to the state reformatory, to serve as provided by law for grand larceny, the two terms to run concurrently. Motion for new trial was made and overruled. The only question presented here is whether the trial court erred, to the prejudice of the defendant, in the admission of certain evidence.

The information charged that Nelson Appleby (appellant) and Elmo Banning stole twenty-three chickens from Walter Leniton on the night of April 8, 1941, and twenty-six chickens from Joe Holeman on the night of the ―― day of April, 1941. All parties involved lived in Chautauqua county. Trial was held in April, 1942. Defendant Banning was the principal witness for the state, and he recited at length and in detail the circumstances connected with the theft of the chickens, which he said was committed by him and Appleby together. He testified that they took chickens from both the Leniton and Holeman places on the night of April 8, and that

they returned and again took chickens from Holeman's on the night of April 9. He testified that he was eighteen years old at the time of the trial, and Appleby testified he was twenty-two.

As a witness for the state, Charlie Coe, undersheriff of Chautauqua county, testified concerning investigation which he made following the theft, and of conversation which he had with Appleby. He testified that Appleby admitted selling chickens to Mrs. Brashear at Cloverdale on the morning of April 9, but said that they came from his home—that his mother left them to him when she died. Mrs. Brashear testified that she bought chickens from Appleby early on the morning of April 9, and that the chickens were in sacks, and he told her his mother had put them in the sacks; that Banning was with him.

Holeman testified that he was with Coe when the conversation with Appleby took place; that Appleby lived on a farm with his father and grandfather and that Appleby stated to them that he sold chickens at Cloverdale, that they came from his home, that he had a right to sell them and that when his mother died she left him the chickens.

The appellant testified that he lived with his father and grandfather on the farm; that his mother had died five years before; that he sold chickens at various places during April of 1941; that he thought the first time he sold chickens was on April 3, 1941; that he sold chickens to Brashears; that the chickens he sold were either his own or his father's or grandfather's and sold with his father's permission; that he had seventy-five or a hundred chickens on April 1, 1941, but didn't know how many he had on April 1, 1940; that usually he and his father and grandfather had probably seventy-five to one hundred chickens on the place. As to the chickens sold at Cloverdale on April 9, and at Independence on April 10—concerning which sales the state had introduced testimony—he testified that they were not his. Briefly, his testimony was that on the morning of April 9, while driving home from Cedarvale, he came upon Elmo Banning, whose car was standing by the roadside with a flat tire; that Banning had in his car several sacks of chickens which he said he was taking to market and asked him if he would haul them in as he had no spare tire; that he and Banning loaded the chickens into his car and took them to Cloverdale, where Banning sold them to Mrs. Brashear; that he had no knowledge that the chickens had been stolen, and that Banning paid him about a dollar and a half

for hauling them in. As to the conversation with Mrs. Brashear and just what took place then, his testimony differed very materially from the testimony given by Banning and by Mrs. Brashear.

As to the chickens which the state contended were sold on April 10, he said that he met Banning and his brother, Lyle Banning, in Cedarvale that day and at their invitation went with them to Neodesha to look for a job, and then on to Independence, and that he did not know until they were some place between Sedan and Independence that they had some chickens in the back of the car. He testified that he had nothing to do with selling the chickens at Independence.

As part of his defense appellant entered a plea of alibi. He said that he spent the week beginning April 7, 1941, at the home of Frank Blenden, in Cedarvale, that he slept there the nights of April 8 and 9, as well as other nights in the week, and took most of his meals there. Several members of the Blenden family and one or two others testified in support of the alibi and told with considerable particularity what took place on different days during the week in question. In order to fix the dates, there was testimony that it was the week when appellant was helping to overhaul an old car at the Blenden place and that it was the same time when there was a carnival in Arkansas City. As a part of this recital, Frank Blenden testified that he and his son Leslie went to Sedan on April 9, to get repair parts, consisting of rings, back main bearings and gaskets, for his car that was being overhauled. His testimony was that all the parts were bought at Sedan, but was not clear as to what parts were bought at different stores there. The son Leslie testified that they bought the rings at the Dewey Auto Store, Sedan, the gaskets at the Western Auto Supply, Sedan, and the bearing caps at Cedarvale. In rebuttal, the state called Bob Hays, the operator of the Western Auto Store at Sedan, and asked him about the sale of auto parts during the week of April 7, 1941. He testified that his records showed no sale of a rear main bearing for a model A Ford during that week. When asked whether the records showed a sale of gaskets, he replied that he hadn't checked as to that, but would do so if he were told the exact type of gasket involved.

Appellant first predicates error on the admission of the Hays testimony, *supra*, although counsel frankly stated in the oral argument that he would not consider such error enough, standing alone, to call for reversal.

We think this alleged error calls for very little discussion. The state had a right, if it could do so by proper means, to break down appellant's alibi. Apparently the purpose in offering the Hays testimony was to discredit appellant's evidence fixing the dates when the car was being overhauled. Upon analysis the Hays testimony does not appear either to prove or disprove the testimony as to the purchase of auto parts, and even assuming it should have been excluded, its admission was not prejudicial.

We come to the one contention upon which appellant principally relies. The county clerk, put on the stand by the state, in rebuttal, was permitted over objection to testify concerning the property tax returns of the defendant's father and grandfather with whom he lived. These statements, taken by the assessor on April 1, 1941, covered property as of March 1, 1941. The witness testified that the blanks upon which the returns were made contained, among many items, an item "poultry" and that neither the father's nor the grandfather's sworn return showed any entry after that item. The apparent purpose was to show that there was no poultry on the place where defendant lived, and thus to discredit his testimony that he had sold chickens from there in April. We agree with appellant that the testimony should not have been admitted. Both the father and grandfather were in the courtroom during the trial and could have been called. The tax returns were not those of the defendant, he was not responsible for them, and he had no opportunity of cross-examination. Furthermore, they were not the best evidence on the question of whether there were chickens on the Appleby place in April. They would have been the best evidence on a question of whether the father and grandfather had returned any chickens for taxation in 1941, but that was not the issue. On the other hand, it may be noted that appellant also had the opportunity, which he did not choose to take, of calling the father and grandfather to testify as to whether there were chickens there. Conceding that admission of the testimony was error, it does not follow that the judgment must be reversed and a new trial ordered. In the first place, we are directed by the statute (G. S. 1935, 62-1718) to disregard technical errors or defects not prejudicial to the substantial rights of the parties. In compliance with that rule, many judgments have been affirmed in spite of technical errors. (*Taylor v. Clendening,* 4 Kan. 524; *Germond v. Littleton,* 22 Kan. 730; *Land Co. v. Thompson,* 57 Kan. 792, 48 Pac. 34; *Cook v. Railway & Bridge Co.,*

101 Kan. 103, 165 Pac. 803; *Turner v. Close*, 125 Kan. 485, 264 . Pac. 1047; *Taggart v. Taylor*, 128 Kan. 330, 278 Pac. 21; *State v. Carter*, 148 Kan. 472, 473, 83 P. 2d 689; *State v. Linville*, 150 Kan. 617, 621, 95 P. 2d 332, and many others.)   In the second place, the error must be appraised in the light of the whole record, to determine whether substantial rights have been prejudiced.   (5 C. J. S. 805-810; *State v. Patterson*, 112 Kan. 165, 170, 210 Pac. 654; *Clark v. Insurance Co.*, 105 Kan. 728, 185 Pac. 1056; *Union Public Service Co. v. Public Service Comm.*, 135 Kan. 123, 9 P. 2d 976; *State v. Jones*, 137 Kan. 273, 279, 280, 20 P. 2d 514; *State v. Badgley*, 140 Kan. 349, 353, 37 P. 2d 517.)

The trial of this case consumed two days.   The abstract submitted being brief, we sent for the transcript and have carefully examined the entire record.   That examination convinces us that the defendant was not prejudiced by the admission of the testimony in question.   It is unnecessary to review the evidence in detail.   Suffice it to say that in addition to the story, told with minute details by Banning, who testified that he and the defendant stole the chickens, there was circumstantial evidence in support of his testimony, there was damaging testimony given by Mrs. Brashear as to conversation had concerning the theft in the presence of defendant and his father; by Leniton as to conversation had with Banning very soon after the theft; by Coe, undersheriff, as to conversation with defendant's father in defendant's presence and other testimony, by the state, not necessary to relate.   While objection was made to some of this testimony, its admission is not assigned as error.

The testimony complained of appears inconsequential when viewed in the light of all the evidence before the jury which weighed it and passed upon the credibility of the witnesses.   This view is fortified by close examination of the testimony given by the county clerk.   If it be said that the returns, made not by the defendant but by his father and grandfather, then sitting in the courtroom, tended to create in the minds of the jurors—doubtless familiar with tax returns—a belief that there were no chickens on the Appleby place and thus discredit the defendant's story, any such impression must have been much weakened by testimony elicited on cross-examination of the county clerk.   He answered "Yes" when asked: "It is a very common occurrence for them not to show poultry when they had it?"

It follows from what has been said that the judgment must be affirmed.   It is so ordered.