## No. 36,991

THE STATE OF KANSAS, *Appellee,* v. RUSSELL W. BARNES, *Appellant.*

(190 P. 2d 193)

Opinion filed March 6, 1948.

*Dan Cowie,* of Topeka, argued the cause, and *F. J. Rost,* of Topeka, was with him on the briefs for the appellant.

*Warren W. Shaw,* county attorney, argued the cause, and *Edward F. Arn,* attorney general, *William L. Reese* and *Herbert A. Marshall,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant was tried on a charge of statutory rape. The jury returned a verdict of guilty. Defendant's motion for a new trial was denied, and judgment was rendered on the verdict. In due time defendant perfected his appeal to this court, specifying error in the particulars hereafter discussed.

The first three specifications of error may be considered together. They are that the trial court erred in permitting the state to impeach its witness, Lila Lee Barnes, without having first laid a proper foundation, in admitting in evidence her prior contradictory statement not made in the presence of the defendant, and in refusing to give a requested instruction limiting the jury's consideration of Lila Lee's testimony.

The factual situation may be stated briefly. Lila Lee Barnes, as a witness for the state, stated that she was a daughter of the defendant, and had never been married; that she had a baby born November 1, 1945, and another born December 1, 1946. In response to a question she stated she did not know who was the father of her child and the county attorney then stated he would like to lay a foundation to cross-examine the witness based upon information previously given. Defendant's counsel objected that the witness had not yet appeared hostile and that the defendant was not charged with being the father, but with rape. The witness was then asked if she had had sexual relations with a man prior to the birth of her first child and answered affirmatively. She was then asked "Who was the man?" and answered "I don't know." She was then asked if it was the defendant and answered it was not. The county attorney renewed his request and the trial court stated, "Go ahead and ask your questions and I will rule on them." Then followed questions and answers pertaining to a meeting of the witness with certain officials and to statements she then made. She was then questioned as to whether she had been asked if she had had sexual intercourse with a particular man, to which she answered, "Yes." Objection was then made to the line of cross-examination as being incompetent, irrelevant and immaterial; that it was hearsay not made in the presence of the defendant, and was improper cross-examination, no proper foundation having been laid. Nothing was said about impeachment. The objection was overruled, and in response to a further question the witness stated that she had said it was her father. On cross-examination by counsel for defendant, the witness testified to a conversation she had with counsel in which she stated in considerable detail the reasons why she had told the officials the story she did. Those reasons need not be repeated. Defendant's counsel then asked her if her father had ever had intercourse with her and she said "No," and that answer was repeated by her.

Appellant's argument is based on a premise that the state was attempting to impeach its own witness, and our attention is directed to authorities treating the question of when that may be done. (*Johnson v. Leggett,* 28 Kan. 590; *State v. Keefe,* 54 Kan. 197, 38 Pac. 302; *Johnston v. Marriage,* 74 Kan. 208, 86 Pac. 461; and *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76.) These cases need not be reviewed for we think the premise unsound. There is a distinction between cross-examination and impeachment. To impeach a witness means to call into question the veracity of the witness by means of evidence offered for that purpose, or by showing that the witness is unworthy of belief. Extrinsic evidence is required for impeachment, and though the foundation for impeaching evidence may be laid through cross-examination, the cross-examination itself is not impeachment. Of course it is always to be borne in mind that differences between direct and cross-examination, or between different witnesses, may create a situation that affects credibility of a particular witness and the weight to be given his testimony. In the case before us, the state was confronted with a situation where its witness, daughter of the defendant, was testifying contrary to a statement of facts previously made, and in a legal sense, was a hostile witness. Perhaps the situation could have been more clearly developed, but it cannot be said on the record presented that the trial court erred in permitting the state to cross-examine its witness. See *Johnson v. Hager,* 148 Kan. 461, 83 P. 2d 621, where some of our decisions are reviewed, and where it was held that the plaintiff may, within the discretion of the trial court, cross-examine his own witness when answers given show the witness to be unwilling and hostile. See, also, *State v. Olthoff,* 141 Kan. 70, 85, 40 P. 2d 384. As we view the matter presented, the trial court did not abuse its discretion in permitting the state to cross-examine the witness.

Appellant argues together his contention that the answer elicited from Lila Lee Barnes when cross-examined by the state was hearsay, being a statement not made in the presence of the defendant, or if admissible, that the court should have given his requested instruction limiting the jury's consideration of the testimony. In support, appellant cites authorities treating the general subject of impeaching evidence, and *State v. Wellington,* 43 Kan. 121, 23 Pac. 156. It may be noted that the question asked the witness did not call for an answer as to the guilt of the appellant but only as to

what she had previously told the county officials. Where the utterance is offered as truth of the fact asserted the credit of the assertor becomes the basis of inference and therefore can be received only when the assertor is on the stand and subject to cross-examination, but if the utterance is offered, not as an assertion to evidence the matter asserted, but without reference to its truth, the hearsay rule does not apply. See *Malone v. New York Life Ins. Co.*, 148 Kan. 555, 558, 83 P. 2d 639, and cases cited.

In *State v. Wellington,* supra, relied on by appellant, the state offered in evidence upon the merits a letter written by a Mrs. Crandall to the defendant addressed to him under an assumed name, and which letter the defendant was not shown to have received or seen, for the purpose of impeaching Mrs. Crandall, who was not called by the state as a witness. The letter was untimely offered and received in evidence. Mrs. Crandall was later called as a witness for the defendant. This court held it was error for the trial court to refuse a requested instruction limiting consideration to impeaching purposes. That case is clearly distinguishable from the case at bar. Here we have no impeachment and no hearsay testimony, and the trial court was not required to single out this one phase of the witness's testimony and instruct on it. And this is particularly true where appellant's counsel, on his cross-examination, developed from the witness her statements to him as to her reasons for making the previous statements she had made to the county attorney, and then elicited from her a direct statement that appellant had not had sexual intercourse with her.

In presenting his fourth specification of error appellant states that his requested instruction No. 1 covered the subject of confessions and also his sole theory of his defense, and that the trial court erred in refusing to give the instruction.

A short review of the record discloses that the sheriff testified that, in the presence of other officials a conversation was had with appellant who was asked if he knew why he was being questioned and said he did; that he was the father of Lila Lee Barnes' babies; that he had had sexual intercourse with her about fifteen times. At a later conversation, the court reporter was present and the matter was again discussed. He further stated that at no time was anything said to put appellant in fear, and there were no promises of immunity. Other witnesses testified to the same general effect and that appellant complained of having a headache and the under-

sheriff gave him some aspirin. The record does not disclose any objections to any question or otherwise. The court reporter was then called and testified that he had transcribed the questions asked appellant and his answers. The state offered this transcript. In a colloquy which followed, appellant's counsel said he had never seen the transcript and desired time to examine it. The court recessed to give him time to do so. When the court again convened the state's offer was renewed, and appellant's counsel stated he had no objection, and the transcript was received. We need not review that transcript but remark that although it went into detail, its over-all effect was cumulative of other testimony that appellant had had sexual intercourse with his daughter, was the father of her two babies and that his statement was true and was voluntarily made without promise of immunity or benefit to him.

At a later stage of the trial appellant was a witness in his own behalf and stated that he had made the answers to questions asked as disclosed by the transcript, stated his reasons for making those answers, repudiated the truthfulness of his answers about sexual intercourse with his daughter, stated that he had never told the officials the statements made were untrue. and had never made any corrections until he was then on the witness stand. He denied ever having had sexual intercourse with his daughter.

The gist of the requested instruction was this: Evidence had been introduced that defendant had confessed, that defendant had denied he fairly and voluntarily made the statements attributed to him; that such statements were made by him in the belief that he would enable his daughter to escape punishment as a juvenile delinquent, and that the statements were made by him at a time when he was sick and his sickness aggravated by drugs given him by the sheriff's force; that the jury was the judge as to whether the confessions were voluntary, and if voluntary the jury should consider his statements in connection with other testimony in determining guilt or innocence; that if the confessions were made as a result of fear his daughter would be confined as a juvenile delinquent and such fear rendered the defendant incapable of exercising a free and voluntary action, the confessions should be disregarded.

In his argument, appellant ignores the fact that no objection was made to any testimony of witnesses, and when the transcript, in large part cumulative, was offered there was an affirmative "no objection." Appellant directs our attention to *State v. Seward*, 163

Kan. 136, 181 P. 2d 478, and argues that under its reasoning the confessions were not voluntary because it was not shown that he was advised of his right to counsel and that his statement would be used against him. A rehearing has been granted in the above entitled cause, but at this time it has not been reargued. But as that opinion now stands, it does not support appellant's contention. There specific objection was made that the so-called written confession was not voluntary; that the burden was on the state to show it was and not on the defendant to show it was not. Other reasons why it was held that a seventeen-year-old defendant had not been adequately protected need not be set forth.

Under the evidence in this case no question may be raised as to whether appellant's admissions and confessions were made voluntarily. The appellant, testifying in his own behalf admitted he had made the admissions and confessions, explained and gave his reasons for so doing, denied the truthfulness of what he had told the officers, and denied his guilt. There is no need to discuss decisions dealing with whether the question is for court or jury, where burden of proof is and such matters for the situation presented by the record does not require that to be done. Insofar as the requested instruction may cover the question of voluntary admission and confession, the refusal of the court to give it was not error.

There remains for discussion however whether the instruction, even though it may not have been full and accurate, was sufficient to challenge the trial court's attention to the fact that appellant was entitled to an instruction on his theory of the case or, more particularly, on the theory of his defense. It may first be observed that the instructions are set out in full in the abstract. Under those instructions the court advised the jury of the charge and that the appellant had entered a plea of not guilty. The court advised the jury that appellant could not be convicted unless his guilt was proven beyond reasonable doubt, defining the last term; that there was no presumption of guilt and that the burden was on the state to prove guilt, followed by instructions as to determining weight of evidence, demeanor of witnesses and their interest in the result, and that the jurors were exclusive judges of the facts and of the credibility of the witnesses, and that they might in their discretion believe or not, all or part, of a witness' testimony. No complaint is made of these instructions and for that reason they are only summarized. It may be said there was no instruction presenting defendant's

theory of defense as later mentioned. Appellant's complaint is that his theory was that although he had made the admissions and confessions disclosed by the state's evidence, his evidence disclosed his explanations and reasons why those admissions and confessions were not voluntary, in a legal sense, but were made, in part, because he was sick and, in part, because he thought that he could protect his daughter; that he had never had sexual intercourse with his daughter and that the jury should have been definitely advised in determining the facts, whether the admissions and confessions shown by the state or his version as detailed on the witness stand, was to be believed; that the requested instruction sufficiently challenged the trial court's attention, but that no instruction dealing with his theory was given.

A majority of the court is of opinion that appellant's contention as to his theory of defense is correct and that his requested instruction was sufficient to challenge the trial court's attention to the necessity of an instruction thereon. In view of the request we need now discuss the general duty of the court, whether requested or not, to instruct on the theory of defense. (23 C. J. S., p. 731, *et seq.*, 16 C. J., p. 964, and 53 Am. Jur., p. 487.) To a casual listener, or to the trial court, the appellant's statement of his reasons for admissions and confessions may seem preposterous, fantastic and unbelievable, but as was held in *State v. Severns*, 158 Kan. 453, 148 P. 2d 488, the defendant in a criminal action is entitled to have an instruction on his theory of defense whenever there is any evidence to support it, the weight of the evidence being for the jury. Such an instruction not having been given, the substantial rights of the appellant have been prejudiced.

Appellant's fifth specification of error is that the trial court erred in giving instruction No. 10 as it negatives and is repugnant to instruction No. 2 and could only confuse and mislead the jury. In presenting his argument appellant makes reference to certain matters not disclosed by the record as abstracted. We shall confine our opinion to matters disclosed by the abstracts.

As has been previously noted, there was evidence that the appellant had had sexual intercourse with his daughter on numerous occasions. After the state had rested its case in chief, the appellant moved the trial court to compel the state to elect upon what offense it relied for conviction. This motion was sustained and the state elected to rely upon the last act alleged to have been committed

during the months of June or July, 1946, as shown by the state's evidence. By its instruction No. 2 the trial court advised the jury that the state had elected to rely upon the act last mentioned, and that unless the jury believed from the evidence beyond a reasonable doubt that the defendant did "at said time and place commit the offense relied upon by the state then your verdict should be for the defendant." By its instruction No. 3 the trial court advised the jury that evidence had been admitted of other offenses than the one relied upon by the state, but that the evidence bearing upon the commission of other offenses was withdrawn from the jury's consideration. Instruction No. 10 was that it was not necessary for the state to prove the exact time alleged in the information, but that it must prove the alleged crime was committed within two years prior to the institution of the prosecution. There is no showing that any objection was made to any of these instructions. On the specific point, it is contended instructions No. 2 and No. 10 are contradictory, and no one can know of which particular act within the two-year period any juror may have concluded the appellant was guilty. In our opinion the situation is not as confusing as the appellant contends. The jury was definitely advised that only one act, the last act occurring in June or July, 1946, was relied on for conviction, and that evidence of other acts was withdrawn from consideration. Under the circumstances we must assume that the jury considered only the evidence which was not withdrawn.

We are admonished by the provisions of the code of criminal procedure that on appeal this court must give judgment without regard to technical errors or to exceptions which do not affect the substantial rights of the parties. See *State v. Appleby*, 155 Kan. 871, 130 P. 2d 568, and cases cited. Possibly it is true that instruction No. 10 is somewhat repugnant to instruction No. 2, but when other instructions are considered and the whole record is taken into account, it does not appear that the jury was confused or that the rights of the appellant were prejudiced or affected.

Appellant's last specification of error is that the trial court erred in denying his motion for a new trial. Under this heading appellant recognizes that the errors complained of have been discussed under other specifications with the exception of his motion, at the close of the state's case, that he be discharged. The essence of the argument is that the admissions and confessions of appellant were not competent evidence; that there was no other evidence, and hence

the motion was good. This argument is answered by what is said heretofore. The trial court did not err in its rulings on the motion for a new trial, except with respect to instructions, and that has been treated.

In view of our conclusions, it follows that the judgment must be and it is reversed, and the cause remanded for a new trial.

HARVEY, C. J., THIELE and PARKER, JJ., dissent from paragraph 2 of the syllabus and the corresponding part of the opinion.